ORIGINAL

FILED

ERIK PAUL BIGONE
CDC# F-03865 Fb; L 3-110 L
CC.C. Lassen Unit
P.O Box 2210
Susanville, CA 96127
In Persona Pro Per

E-filing

FEB - 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

530
New

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIK PAUL BIGONE,

    Petitioner,

v.

K. PROSPER, WARDEN,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

Case No._____

**CV 08 ⌐0811**

(PR)

## PETITION FOR WRIT OF HABEAS CORPUS
## AND POINTS AND AUTHORITIES IN SUPPORT
## BY A PERSON IN STATE CUSTODY
## 28 U.S.C. SECTION 2254

### I.

## INTRODUCTION

A.    Petitioner, Erik Paul Bigone, In Persona Pro Se, hereby submits this Petition for Writ of Habeas Corpus authorized by 28 U.S.C. section 2254, challenging the state court's conviction and sentence for one count of gross vehicular manslaughter while intoxicated, in violation of Penal Code Section 191.5(a), and two prior convictions for driving under the influence, in violation of Penal Code Section 191.5(d), resulting in a term of fifteen years to life in prison.

B.    Petitioner's imprisonment is illegal and unconstitutional.

C.    The Federal Constitutional violations are either contrary to or a misapplication of federal law.

D.    Petitioner is factually innocent of gross negligence while driving under the influence.

1.

E. Petitioner is legally innocent of gross negligence while driving under the influence.

## II.

# STATEMENT OF JURISDITION

Petitioner asserts that this Court has proper jurisdiction in the instant case as bar and is founded on the provisions under 28 U.S.C. section 2254.

## III.

# EXHAUSTION

Petitioner asserts that all issues and claims raised herein have been properly presented to the State's Highest Court and fully exhausted as required. (see attached appendix, Exhs. 1 & 2).

## IV.

# PROCEDURAL HISTORY

On June 26, 2006, petitioner, by and through Appellate Counsel Joseph D. O' Sullivan, Paul M. Dennison and Alexandria Carl, filed the Opening Brief (AOB), raising the following issues:

(A). Irrelevant and/or unduly prejudicial evidence concerning the actual driving involved in appellant's prior DUI convictions was improperly admitted into evidence without a limiting instruction which resulted in an unfair trial.

(B). The evidence of gross negligence is insufficient to sustain the conviction.

(C). Did the trial court commit error in denying appellant's penal code section 1118.1 motion at the close of the prosecution's case?

(D). Did appellant recieve (i) a fair trial, (ii) was there prosecutorial misconduct and or (iii) ineffective assistance of counsel in the context of the BAC evidence as testified to by witness Coleman?

(E). Does the penalty for the crime appellant was convicted of violated due process and/or is the punishment cruel and unusual punishment?

(F). Was the search of appellant's vehicle and evidence seized therefrom without a warrant lawful?

On April 20, 2007, the Court of Appeals of the State of California, First Appellate District, Division Three, denied the direct appeal. (see attached appendix, Exhs. 1 & 2).

The appellate attorney's, contrary to the representations made to petitioner, failed to file a timely petition for review in The Supreme Court for the State of California.

On July 5, 2007, petitioner, proceeding in Persona Pro Per, submitted an Original Petition, raising the following issues:

(A). The Court committed error for admitting irrelevant and highly prejudicial evidence

2.

regarding the actual facts pertaining to the petitioner's driving in his prior DUI and then failed to charge a proper limiting instruction that resulted in a fundamentally unfair trial, in violation of due process, requiring reversal.

(B). Petitioner's conviction of gross negligence is contrary to law and is not supported by the facts of the case, in violation of due process of law; requiring reversal.

(C). Petitioner asserts that he was denied his right to due process of law and his right to a fair trial, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, for failing to properly investigate and cross examine Mr. Potts or a defense expert; requiring reversal.

(D). Cumulative error and impact.

## V.

## STATEMENT OF THE CASE

On February 7, 2005, an information was filed in the Lake County Superior Court charging peitioner with gross vehicular manslaughter while driving intoxicated. The information alleged two prior convictions for driving under the influence. (C.T. 44-45). Trial by jury commenced on September 20, 2005. (C.T. 60). On the same date, petitioner admitted the two prior convictions. (C.T. 61). On October 5, 2005, the jury found petitioner guilty of gross vehicular manslaughter while intoxicated. (C.T. 73, 192). On November 7, 2005, the court imposed judgment of imprisonment for a term of 15 years to life. (C.T. 231, 233). Notice of Appeal was timely filed on December 13, 2005. (C.T. 252).

## VI.

## STATEMENT OF FACTS

On May 31, 2004, sometime after 4:30 in the morning hours, petitioner was driving northbound on Highway 29, in the area between Kelseyville and Clearlake, in Lake County. He was alone in his older model Cadillac. Driving in front of him on the two lane highway was Joseph Fossa and his son. Mr. Fossa was towing a 22-foot trailer and boat with his extended cab pickup truck. Mr. Fossa noticed petitioner behind him for at least one mile and did not observe any erratic driving on petitioner's part. On a couple of occasions, Mr. Fossa slowed down, varying his speed. Mr. Fossa's son also did not notice any erratic driving on petitioner's part. Petitioner also slowed down several times while driving behind the Fossas.

## CIRCUMSTANCES OF COLLISION

On a straight, level section of the road, where there were broken single yellow dividing lines in the middle of the road, petitioner moved to pass Mr. Fossa. At that time, two cars, in the distance, were fast approaching, heading north. The second of the two cars was tailgating the first, specifically the lead car. Petitioner could not complete the maneuver of passing or

3.

returning behind Mr. Fossa's extended vehicle in sufficient time before the oncoming cars were upon him. The first car avoided petitioner by using the hard shoulder. The second car went straight into petitioner's car. The occupant of that car died on the scene.

## FACTS CONTINUED

Sheriff's deputies and emergency personnel arrived on the scene. Petitioner, badly injured, managed to get out of the car. He was then transported to an airfield and flown to Santa Rosa Memorial Hospital. On route, he vomited. Witnesses alleged they could get an alcohol smell off of petitioner. A blood test taken at Santa Rosa at 6:15 a.m. indicated a blood alcohol content (hereinafter BAC) of 0.135 percent. Another test taken at 8:19 a.m. showed a BAC of 0.11 percent.

Later at the impound yard, police, without a search warrant, did search petitioner's wrecked vehicle and found a partially consumed bottle of Wild Turkey whiskey.

The trial court admitted testimony from the San Francisco arresting officers describing petitioner's driving on the occasions he had been previously arrested relating to DUI. The trial court excluded documentary evidence concerning probation and the terms of probation related to those cases as being unduly prejudicial. A prosecution expert testified that petitioner's BAC could have been anywhere from 0.0-0.08 percent alcohol, depending on when he consumed alcohol. Petitioner testified that he had not consumed alcohol prior to the accident but drank some Wild Turkey while still pinned in the vehicle.

## VII.

## LEGAL FEDERAL STANDARD OF REVIEW

Under 28 U.S.C. section 2254(d)(1), the writ of habeas corpus may issue only if one of the following two conditions is satisiied, to wit, the state court's adjudication resulted in a decision that (1) was contrary to clearly established federal, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case diferently than the Supreme Court has on a set of materially indistinguishable facts. The phrase "clearly established federal law, as determined by the Supreme Court of the United States," refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

4.

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

## VIII

## EXHAUSTION REQUIREMENT

A. State Judicial Remedies: An application or a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that-(A). The applicant has exhaustion the remedies availahble in the courts of the state; (B)(i), there is an absence of available state corrective process; or (ii), circumstances exist that render such process ineffective to protect the rights of the applicant. (Sullivan v. Boerckel, 526 U.S. 838 (1999)).

## IX

## REASONS FOR GRANTING THE WRIT

**THE COURT COMMITTED ERROR FOR ADMITTING IRREVELANT AND HIGHLY PREJUDICIAL EVIDENCE REGARDING THE ACTUAL FACTS PERTAINING TO PETITIONER'S DRIVING IN HIS PRIOR DUI AND THEN FAILED TO CHARGE A PROPER LIMITING INSTRUCTION THAT RESULTED IN A FUNDMENTALLY UNFAIR TRIAL, IN VIOLATION OF DUE PROCESS, REQUIRING REVERSAL.**

Petititoner asserts that the overall testimony elicitied from the two San Francisco police officers by the prosecution what wholly irrelevant and highly prejudicial to the outcome of this case. Additionally, compounding this damage, the court fundamentally erred by failing to undertake the required analysis under the Federal Rules of Evidence 402, that state in pertinent part: No evidence is admissible except relevant evidence. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority evidence which is not relevant is not admissible. (see Greer v. U.S., 245 U.S. 559.). Moreover, the court erred in failing to give a sua sponte limiting instruction at the time the evidence was admitted, and the prosecutor's remarks in closing did nothing to cure the legal error. In fact, the remarks only highlighted and elevated the prejudical testimony of the officers that caused the trial to be devoid of any fair play because it created an irreparable and irreconcilable taint to the presumption of innocent until proved guilty.

Prior to trial, the prosecution orally moved the court for permission to introduce the

5.

the testimony describing the actual driving underlying petitioner's two prior DUI convictions, the first in 1996, the second in 1997, both of which were misdemeanors. The prosecution laid out his plan to introduce the testimony of the police officers who arrested petitioner on the prior events. He indicated that these officers would testify about petitioner's terrible driving, including certain alleged facts of side-swiping a car and reackless driving on another. (R.T. 6.). The supposed point of the introduction was "to show petitioner's knowledge and his state of mind with respect to understanding the dangerousness of his conduct beyond simply going to some drinking and driving class." More accurately stated, the prosecutor needed to get the uncharged, unproved misconduct evidence in front of the jury to cure the defects and lack of evidence of his case-in-chief. Basically, the prosecution was cognizant that his case was a failure without obtaining an angle to throw mud.

In response to the prosecution's positition, trial counsel agreed to stipulate to the two prior conviction for the purpose of specifically dealing with the special allegation under P.C. section 191.5(d) in the information.

The usual instruction regarding stipulations in a criminal case reflects as much: "When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts. (1 E.Devitt, C. Blackmar, M. Wolff, & K. O'Malley, Federal Jury Practice and Instructions, section 12.03 p. 333 (4th ed. 1992).

However, trial counsel objected to the admission of the events underlying the prior convictions.

In the case at bar, the prosecution specifically relied on two unrelated, state cases to justify the admission of the evidence. (see People v. Thomson, 79 Cal.App.4th 40 (2000) and People v. Bennet, 54 Cal.3d 1032 (1991)). Neither of these case had any legal import to the situation at bar.

The trial court subsequently found that the circumstances of the two prior convictions were admissible in the People's case to show gross negligence.

Defense counsel renewed the motion to exclude the testimony of the officers ust beore they were called to testify. (R.T. 483.). Again the prosecutor made assurances that the only purpose of introducing the evidence was "to show the deendant's awareness of the risks of driving under the influence of alcoho." He stated that "in order for us to establish gross negligence, the manner in which the driving occurred and the fact that he experienced that, was aware of it later at a time when he had come down from being under the influence of alcohol, was enough to show that he had a much greater awareness of the risk than a person who hadn't been through those experiences." (R.T. 484.).

6.

# THE RECORD IS VOID OF EVIDENTIARY WEIGHING

However, it should be kept in mind by this court that no where in the record does it reflect that the judge weighted the alleged evidence of petitioner's prior, uncharged act...should have been excluded, because it occurred nearly eight years earlier and was far "too remote in time to be relevant to the present, or that it was overly time consuming."

Regardless, the court made a brief query as to how long the presentation of the evidence would take and concluded without any legal analysis that "maybe it will or maybe it won't." (R.T. 484.). The court ordered that the proposed evidence was relevant in that it's relevant to the petitioner's knowledge of what would be ordinary care in his experience and driving under the influence and that he may have done it this time as well. Coincidentally, there appears that no C.E.C. section 352 or F.R.E. 402 analysis appears to have been taken. The legal formula for these evidentiary issues is that all doubt must be resolved in the accused's favor. Even more damaging is the irrefutable fact that no limiting intruction was given prior to or at the time either of the officers testified. This was extremely damaging to the fair trial process in that it spills over into a finding of guilt by process of outlawry.

## OFFICER CARRASCO'S TESTIMONY

Officer Carrasco testified that he participated in the arrest of petitioner on April 5, 1996, on Judah Street, in San Francisco. He stated that petitioner was riding a motorcycle with a very loud, broken muffler, not stopping at posted stop signs on the street and doing 50 mph. He further testified that even after petitioner saw the police, who were following him with lights and sirens on, he continued travelling for another five blocks before stopping, and that petitioner's (BAC) was .147, .141 on that occasion. Amazingly, defense counsel conducted no cross examination. (R.T. 486-491).

## OFFICER PAPALE'S TESTIMONY

Officer Papale testified to arresting petitioner on February 6, 1997, in San Francisco, for driving under the influence. He testified that he saw petitioner go through a red light, fail to yield to pursuing police who had lights and sirens on, that he was driving at an excessive rate of speed and made a left turn by going over a portion of a median. Papale also testified that petitioner had stated that he had "ran into" a guy earlier the same evening. Additionally, there was no evidence whatsoever that petitioner was in fact under the inluence of alcohol when he supposedly "ran into" the guy, and there was no real explantion as to what "ran into" actually meant, if anything. Papale testified that petitioner's driver's license was either suspended or revoked at the time of this incident and that his (BAC) was .19. Once again trial counsel was either asleep or had just run out of gas because he failed to cross examine this officer, and no

7.

limiting instruction was given by the Court after these officers testified.

## PROSECUTION'S MISLEADING STATEMENTS

Contrary to the representations made by the prosecution to the court for having both officers testify, neither Officer Carrasco nor Officer Papale testified to anything regarding petitioner having undergone counseling, education regarding the potential dangers of driving under the influence of alcohol or related facts thereof. After the officers testified, the prosecution moved to introduce San Francisco Superior Court records to prove petitioner had been placed on probation in both cases, had been ordered to and did participate in drinking driving school on two separate occasions and had been ordered to serve 90 days in a rehabilitation center as a condition of probation in the 1997 case. The defense objected. The trial court ruled that these exhibits could not be introduced into evidence since petitioner had already admitted the truth of the two prior convictions. The People did not call any witnesses to testify about petitioner's participation in the rehabilitative program or driver education classes.

## PETITIONER'S TESTIMONY

Petitioner testified on cross examination and admitted to having bumped into the rear end of a taxi 15-20 minutes before he was arrested in February 1997.

## CLOSING ARGUMENT

During closing argument, the prosecutor told the jury that rarely does the law allow the prosecution to get into the facts of prior convictions. (R.T. 639). He then argued the facts of the two prior DUI situation to show gross negligence. He asserted petitioner collided with a taxi on the second occasion while under the influence of alcohol. (R.T. 639-640). He told the jury he had gone into the evidence of the priors for a limited purpose and that it was not the People's position that because petitioner was guilty before that he was guilty this time.

The court instructed the jury with CALJIC 2.50 while simultaneously abdicating its duty for ailing to instruct the jury as to the legal limit and purpose in which they could consider the evidence. (CALJIC 1.00), thereby allowing the prosecutor's remarks to remain as the only comment on the issue, which are completely meaningless under the principles of law (CALJIC 1.02). The court stated as follows: "Certain evidence was admitted for a limited purpose. At the time this evidence was admitted, you were instructed that it could not be considered by you for any purpose other than the limited purpose for which it was admitted." This is not only err of extreme magnitude but incredibly confusing because the limited purpose was never articulated or defined, thereby causing irreconcilable confusion within the minds of the jury, especially when jurors are assumed to follow the court's charge. (R.T. 709-710). The question here is how can a jury be expected to adhere to a limited instruction that the underlying purpose is left to the

8.

imagination. Additionally, the court did not pinpoint any evidence so admitted, never instructed the jury specifically regarding the officers testimony or the exact nature defining the limitation to avoid exactly what occurred in this case, which is confusion.

Although related to common design or plan rather than knowledge, the court in (People v. Tassel, 36 Cal.3d 77), promulgated a new rule that evidence on uncharged misconduct could be used to demonstrate a common design only "where it is claimed that there is, in truth, a 'single conception or plot' of which the uncharged crimes are individual manifistatations. Absent such a grand design...is really nothing but bestowing of a respectable basis for admissibility-the defendant's disposition.

Therefore, it stands to reason that the prejudicial evidence admitted in this was illegally bootstrapped in already excluded evidence.

1. The Testimony was not Relevant to the Issue of Risk Awareness:

Relevant evidence is evidence having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action. (C.E.C. section 210 & F.R.E. Rule 401). The disputed fact at trial in the context of this case, including the specific reason, of the testimony from the police officers was to establish whether petitioner acted with the requisite elemental metanl state to prove guilt of gross negligence.

Gross Negligence is defined as aggravated, reckless, or flagrant disregard for human life, or an indifference to the consequences of one's conduct.

In essence, the prosecution's representation to the court was based on the theory of relevance that the evidence would prove the mental state, for which the court relied on to make its ruling, and so the prosecution moved and was permitted to present evidence of petitioner's poor driving behavior on two different and unrelated occasions, from seven and eight years earlier, including the alleged fact that the driving behavior led to his arrest for DUI and (BAC) levels involved. Such constitutes a high degree of bad faith and duplicitous conduct that resulted in an unfair trial.

However, the testimony in each instance only described petitioner's driving and (BAC), not his mental state of awareness of the dangers of driving under the influence. The prosecution also asserted facts not in evidence that petitioner "ran into" another vehicle at a time when he was under the influence in the second case. Thus, essentially and mandatorily conclusive without a charge from the judge, the prosecutor stated that because petitioner had exhibited poor driving as observed by the police officers, and was under the influence of alcohol at the time, then he must have had a much greater awareness of the risks of driving under the influence of alcohol. This of course is more speculative than demonstrable reality. Besides, this would allow the allow an unconstitutional inference by lower the burden of proof by the standard of

9.

reasonable doubt.

The point is that awareness, i.e. scienter, of the risk of the danger of driving under the inluence of alcohol does not arise from the act of physically driving while under the influence or from a description by observers of particular driving behavior. The awareness is derived from being made aware of the risk through education programs, none of which were actually testified to by either of the officers. Additionally, the admission of evidence of petitioner's (BAC) on the two previous occasions was exceedingly prejudicial and should not have been admitted.

Ergo, it is the consequences of the driving, not the driving and events surrounding the driving, that gives rise to draw a reasonable inference of awareness of knowledge. (see McLean v. Moran, 963 F.2d 1306, 1310 (9th Cir. 1992), which stated: Instruction that defendant's driving under the influence could be presumed from excessive blood alcohol level measured some time after driver's arrest created unconstitutional conclusive mandatory preseumption because other evidence offered may not have been sufficient to prove same element; with (Hanna v. Riveland, 87 F.3d 1034, 37-38 (9th Cir. 1996), where proof of recklessness did not more likely than not flow from proof of excessive speed. Permissive inference jury instructions are constitutional, however, "so long as it can be said 'with substantial assurances' that the inferred act is more likely than not to flow from the proved fact on which it is made to depend. A passing reference to consider all evidence will not cure a defect in the jury instruction where a jury is entitled to convict by "focusing on a few isolated facts." (Rubio-Villareal, 967 F.2d at 299-300).

The facts must be such that the consequences of the negligent act could reasonably have been foreseen. This was the language used by the trial court in petitioner's case when instructing the jury on gross that "it must appear that the death was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrantly negligent act." Also, the jury was instructed that the 'mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffice law is insufficient in itself to constitute gross negligence. You must determine gross negligence from the level of the defendant's intoxication, the manner of driving, or other relevant aspects of the defendant's conduct resulting in the fatal accident." This instruction, however, and the case law upon which it is premised, does not contemplate the admission of the kind of evidence that the court admitted to show gross negligence. In fact, the instruction confuses the elements inasmuch as it precludes the jury from compartmentalizing unproved facts and lowers the burden of proof.

A presumption is a rule of law by which the finding of one fact, the "basic" or "evidentiary" fact, gives rise to the existence of an element of the crime, the "presumed" or "ultimate" fact. (Ulster County Court v. Allen, 442 U.S. 140 (1979)). In criminal cases, a presumption must not undermine the factfinder's responsibility at trial, based on evidence

10.

presented by the state, to find the ultimate facts beyond a reasonable doubt. This prohibition stems from the Due Process Clause of the Fourteenth and Fifth Amendment to the U.S. Constitution which "protects the accused against conviction except upon proof beyond a reasonable doubt of every face necessary to constitute the crime with which he is charged." (In re Winship, 397 U.S. 358 (1970)).

Thus, abesent the irrevelant and highly prejudicial testimony from which any inference to be drawn would be completely unsupported of the two officers regarding the driving behavior of petitioner years earlier, the prosecution's case would have ultimately failed on gross negligence.

Finally, without conceding, even if the evidence pertaining to petitioner's prior driving was somehow relevant to the issue of awareness, it was far too prejudicial in that it was overly relevant in the Evidence Code section 1101 in the sense of its tendency to stigmatize petitioner as a pathological out of control drunk and dangerous driver, with no respect for the law; to wit, an irreconcilable and improper form of propensity evidence. Again, the trial court should still have conducted an analysis on the premise that "Evidence of uncharged offenses is so prejudicial that its admission requires extremely careful analysis."

The trial court ruled that the People's exhibit 12 and 13 offered to show petitioner was placed on probabation and was ordered as a condition thereof to attend drunk driver programs was either overly prejudicial or of no real probabative value. Following a myopic section 352 analysis in regard to these exhibits, the court ruled that exhibit 13 included charges to which petitioner did not plead guilty and were thus prejudicial since petitioner had admitted the priors. The enumerated charges are as follows: Vehicle Code sections 20002, 2800.1, 14601.1 and a violation of 148. The facts of all of these allegations, in spite of the exclusion of these exhibits listing said charges, were subsequently elicited from Officers Carrasco and Papale in front of the jury. Clearly that testimony was far more prejudicial than presenting the jury with a generic and cold record of allegations on paper.

Although a stipulation did not occur in (Old Chief v. United States, 519 U.S. 172, S.Ct. 644 (1997)), as did in the instant case, the Court's dissenting opinion is right on point and extremeloy instructive in regard to trial counsel conceding that petitioner had a prior felony conviction. Clearly the only purpose, if in fact functioning as a diligent and competent advocate, particularly in the instant case, was to take the prejudicial issue from the jury altogether by effectively entering a partial plea of guilty to the highly prejudicial effect because he harbored undeniable belief that the jury would be unable to scrutinize the events in question, thereby avoiding a prejudicial "spillover" effect. Furthermore, Old Chief, supra, while relying on F.R.E. 403, found that its alternative forms of evidence exist-on that poses the dangers of unfair prejudice, confusion, or delay, and one that doe not-the trial court must exclude the former and

11.

force the proponent to use the latter for proof.

Therefore, if the Court found that even the cold file of exhibits 12 and 13 were either overly prejudicial or non-probative, the emotional testimony describing each of the finer details must be, especially since no expressive and defining limited instruction was charged to the jury. The only legal remedy is reversal.

## X

## PETITIONER'S CONVICTION OF GROSS NEGLIGENCE IS CONTRARY TO LAW AND IS NOT SUPPORTED BY THE FACTS, IN VIOLATION OF DUE PROCESS OF LAW; REQUIRING REVERSAL.

The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution requires the government to prove beyond a reasonable doubt every element of the crime with which a defendant is charged. (In re Winship, 397 U.S. 358, 364 (1970)). If the government fails to sustain its burden of proof on any element, the deendant must be aquitted. The defendent must also be acquitted when the court fails to instruct the jury on any element that the proseuction must prove beyond a reasonable doubt, or when the court defines reasonable doubt in a way that impermissibly eases the prosecution's burden of proof.

In criminal cases, a presumption must not undermine the factfinder's responsibility at trial, based on evidence presented by the state, to find the ultimate facts beyond a reasonable doubt. (Ulster County Court v. Allen, 442 U.S. 140 (1979)).

In order to convict a defendant on a charge of gross negligence certain facts must be found. Gross negligence involves aggravated, reckless, or flagrant disregard for human life, or an indifference to the consequences of one's conduct. The facts must be such that the consequences of the negligent act could reasonable have been foreseen, and it must appear that the death was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrant act.

The jury in this case were instructed that the "mere fact that a defendant drives a motor vehicle while under the inluence of alcohol and violates a traffic law is insufficient in itself to to constitue gross negligence. You must determine gross negligence from the level of the defendant's intoxication, the manner of driving, or other relevant aspects of the defendant's conduct resulting in the fatal accident.

//

12

## 1.    The Facts of Petitioner's Manner of Driving:

The record in this case clearly shows that petitioner's driving on the night of the accident was not reckless.

### a.    Testimony of Margaret Mary Finn:

She was driving south with her sister somewhere between 4:00 a.m. and 4:30 in the morning. There was a car behind her for a short while before I noticed her. It was dark. (R.T. 35-36, 44). She recalled seeing only one set of headlights coming toward her and did not see two sets of lights. (R.T. 44). She didn't remember if the first car moved over or slowed down. (R.T. 45). Instantly there was another set of headlights coming at her and realied that somebody was coming straight at her. (R.T. 37). She steered her car off on the shoulder. She testified that the car following her was only one car length behind her. (R.T. 42).

### b.    Testimony of Joseph Raymond Fossa:

Mr. Fossa and his son were going out to the coast to go fishing. (R.T. 50). He was driving a full-size extended cab Ford four-by-four, towing a twenty-two foot boat. He was going about 50-55 mph and first noticed petitioner's car behind him in the Kelseyville area near where Live Oak and Bell Hill meet Highway 29. (R.T. 50-51, 62). The distance of petitioner's car varied. Sometimes he couldn't see anything but the glow of the headlights, and other times he could distinctly see the headlights in his mirror. But he pretty much stayed a certain distance. He (petitioner) made me thinbk he was a policeman back there running a license plate check or something. He did not notice anything particular about the way the vehicle was being driven. (R.T. 51). He slowed down to about 45 mph, thinking the guy might want to pass, and moved right when approaching passing lanes. Petitioner maintained his position. (R.T. 51-52). Immediately before the accident, Mr. Fossa looked in his rearview mirror, and suddenly there was headlights in the other lane. Looked like he was attempting to pass my boat. He could not determine if petitioner increased his speed, only the impression that he was trying to pass. (R.T. 53). In the split second he saw the vehicle trying to pass him, when he first noticed them, they were up ahead on the road probably a quarter of a mile, you know, half-mile. It's hard to say, you know. (R.T. 53-54). The on-coming cars were in close proximity to each other, seemingly travelling in tandem. (R.T. 54, 60). It was pitch dark out. Petitioner was not making erratic movements and he wasn't weaving. (R.T. 62). There was nothing in terms of petitioner's activity and driving which would indicate he was impaired. (R.T. 63). The distance between him and petitioner varied. (R.T. 64).

### c.    Testimony of Deputy Clark:

He spoke face to face with petitioner while petitioner was still in his wrecked car and did

13.

did not report smelling any alcohol coming from petitioner but would have reported it if he had. (R.T. 89-99).

d.     Testimony of CHP Brian Engle:

He testified that where the accident occurred passing is permitted in that there is a single broken line in the middle of the road. (R.T. 187-188). Officer Engle, based on his professional analysis of the crash scene, agreed that petitioner possible and simply made an error in judgment, a mistake, when he attempted to pass Mr. Fossa. (R.T. 242-243). He also testified that the deceased driving was consistent with her tailgating the lead driver, Ms. Finn. (R.T. 244). Even more telling is the officer placed out flares because the manner in which the roads laid oncoming traffic approached quickly, without little ability to see ahead.

The burden was on the prosecution to prove beyond a reasonable doubt that petitioner acted with gross negligence. It was mandatory on the state to prove more than that petitioner was just driving under the influence of alcohol and more than that he violated a traffic law. As a professional California Highway Patrolman, Officer Engle's clearly substantiates that the facts of this case, though tragic and wholly unfortunate, do not support a conviction for gross negligence.

Simply stated: Petitioner drove down a long, narrow, windy road until he reached Route 29. It was still dark out, and figured he would get some food. (R.T. 529-530). Mr. Fossa described petitioner's driving that of a professional policeman running a license check of his car while petitioner trailed him. There was nothing significant about petitioner's manner of driving whatsoever. No erratic movements, only small fluctuations in speed and distance, not unlike Mr. Fossa's own driving. Mr. Fossa slowed a few time to let petitioner pass, even moved right, but petitioner felt that he was too far behind to attempt to overtake Mr. Fossa and was in no hurry. This demonstrates petitioner's lack of negligence and recklessness, including any reach for indifference to safety. As terrible as it is for anyone to lose their life, the facts of this case clearly show that petitioner made an inadvertent mistake in human judgment, misreading the overall circumstances and distance to Ms. Finn's car, and attempted to pass when there was insufficient clearance and time to do so which is understandable when one enters the combined length of the truck and boat into the calculus. Even Officer Engle recognized that it was simply a mistake. When petitioner realized that he could not cover the distance in time, he hit the horn of his car in an attempt to warn the oncoming driver and made a decision to decelerate rather than recklessly slam on the brakes and risk losing complete control of the car in order to minimize the gravity of the situation. The evidence that petitioner may have been speeding is relatively refuted by Mr. Fossa when he stated that petitioner moved alongside him at a reasonable rate of speed, and Fossa did occasionally vary his speed down to 45 mph. Nothing

14.

about petitioner's driving suggests the inevitability, foreseeability or probability of this awful outcome.

Therefore, the conviction for gross negligence must be reversed. (In re Winship, supra.).

## XI

## PETITIONER ASSERTS THAT HE WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO A FAIR TRIAL, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO PROSECUTORIAL MISCONDUCT; REQUIRING REVERSAL

Petitioner asserts that the prosecution committed willful prosecutorial misconduct for eliciting testimony from Mr. Potts about the effects of marijuana and other illicit drugs on a person with a 0.08 percent (BAC). There was absolutely no evidence in the record to support, let alone even suggest, that marijuana or anything else had been ingested such that the alleged impaired driving could be imputed onto petitioner. Mr. Coleman, the forensic toxicologist had yet to testify, and when he did subsequently testify he could not offer an opinion as to whether the trace substances found had any effect. Nevertheless, Mr. Potts testified to the supposed "Synergistic" effect of combined ingestion of alcohol and marijuana. The prosecution intentionally elicited this testimony to inflame the passions in the jury in order to cure the defects in his case against petitioner, and such tactics were made in extreme bad faith.

Such tactics as presented in this case were first condemned by the U.S. Supreme Court in (Berger v. United States, 295 U.S. 78, 88 (1935)). The Court said, the prosecutor "was guilty of misstating the facts in his cross-examination." The Court further stated, the prosecutor represents 'a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." (see also Darden v. Wainwright, 477 U.S. 168 (1986); Banks v. Dretke, 540 U.S. ____(2004); Donnelly v. DeChristoforo, 416 U.S. 637, 648-49 (1974); Napue v. Illinois, 360 U.S. 264 (1959)).

Thus, the prosecutor's misconduct violated petitioner's federal rights to Due Process of Law to such a degree that no jury would have convicted him if not for the constitutional violation. (Commonwealth of N. Mariana Islands v. Bowie, 243 F.3d at 1114 (9th Cir. 2000)).

Moreover, it was misconduct to allow Mr. Potts to mislead the jury into believing that there was only one possible, i.e. mandatory conclusion, (BAC) at the time of the accident; to wit, 0.18 percent, and for the prosecutor to rely on that number. The substantial and injurious effect

of this misconduct is unmistakable because it places a false absolute on the jury as to the (BAC)

level. Therefore, the only remedy is a per se reversal.

## XII

## PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, FOR FAILING TO PROPERLY INVESTIGATE AND CROSS EXAMINE MR. POTTS OR A DEFENSE EXPERT; REQUIRING REVERSAL OF CONVICTION

In order to preserve this Court's scarce judicial time and resources, petitioner respectfully

incorporates the facts and legal arguments previous raised and articulated in the record.

The issue of ineffective assistance of counsel and the manifest prejudice incurred therein

is abundantly clear from the record. The prosecution in this rested primarily on the 0.18 percent

(BAC), almost exclusively in fact, in order to obtain a conviction on the charge of gross

negligence. However, as mind boggling as it may be, since defense counsel had to have known

that this issue was the pivotal point in the case, there is nothing in the record disclosing trial

counsel's advocacy on behalf of petitioner, either through Mr. Potts or any other defense expert

of his own, to test the adversarial process in which petitioner was entitled. (U.S. v. Chronic, 466

U.S. 648 (1984)). The great range of possible (BAC) percentages, the lowers of which if

accepted and because of the close proximity to the legal limit of 0.08 percent, would have

precluded the any chance of finding of guilty beyond a reasonable doubt.

Additionally, the failure of defense counsel to explore the effect of copious bleeding and

extreme blood loss of petitioner. (R.T. 658), prior to the (BAC) test, and the obvious potential of

a false elevated reading is indeed telling to the factfinder. Clearly, since the case rested on such

a precipice revolving around the seemingly fluidic (BAC) level, there cane be only one logical

conclusion to reach, to wit, counsel rendered ineffective assistance of counsel. (Johnson v.

Zerbst, 304 U.S. 458, 463 (1934); Gideon v. Wainwright, 372 U.S. 335 (1963); Strickland v.

Washington, 466 U.S. 668 (1984)).

## XIII

## CUMULATIVE ERROR AND IMPACT

Petitioner respectfully requests that this Court to review and consider applying the claim

16.

of cumulative error to all of the foregoing issues and claims collectively.

     The U.S. Constitution set a floor which the state may not go below. (Derden v. McNeel, 938 F.2d 605, 609 (5th Cir. 1991)), "This is a Fourteenth Amendment Due Process inquiry and the fact whether one or several trial errors caused the trial to be fundamentally unfair is not important. It has been the law for some time that one error in a trial can violate a petitioner's Fourteenth Amendment right to due process...Several errors taken together can also violate a petitioner's right to due process and cause the trial to be fundamentally unfair," at 610. (Ceja v. Stewart, 97 F.3d 1246 (9th Cir. 1997); with Mak v. Blodget, 970 F.2d (9th Cir. 1992)).

## XIV

## CONCLUSION

     For the foregoing reasons, petitioner respectfully requests that this Court: (1). Grant the petitioner and reverse the conviction; (2). Issue an order to show cause why the relief prayed for should not be granted; (3). Order an evidentiary hearing; (4). Grant any further relief deemed necessary in the fundamental interest of justice.

     I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my belief and knowledge.

     Executed on this 30th day of January year 2008, at Susanville, CA 96127.

     Respectfully submitted,

Eric Paul Bigont

17.

Companion
Appendix

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

DIVISION THREE

**FILED**

APR 2 0 2007

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
DEPUTY

THE PEOPLE,

Plaintiff and Respondent,

v.

ERIC PAUL BIGONE,

Defendant and Appellant.

A112461

(Lake County
Super. Ct. No. CR901979)

Defendant Eric Paul Bigone appeals from a judgment convicting him of gross vehicular manslaughter while intoxicated and sentencing him to prison for a term of 15 years to life. He contends, among other things, that the trial court abused its discretion by admitting testimony of the details of two prior convictions for driving while intoxicated. He acknowledges that the fact of the prior convictions was admissible, but argues that the details of the offenses were irrelevant and prejudicial. He argues further that there was no substantial evidence to support the jury's finding of gross negligence. We shall affirm.

### FACTUAL AND PROCEDURAL HISTORY

Defendant was charged by information with one count of gross vehicular manslaughter while intoxicated. (Pen. Code,[1] § 191.5, subd. (a).) The information also alleged two prior convictions for driving under the influence. (§ 191.5, subd. (d).) The matter was tried before a jury and the following evidence was presented:

---

[1]      All statutory references are to the Penal Code unless otherwise noted.

1

Joseph Fossa testified that at 4:00 a.m. on Monday May 31, 2004, he and his son were driving on highway 29 in Lake County. He was driving a truck and pulling a boat. He was traveling at 50-55 miles per hour when he saw headlights behind his truck. He slowed to 45 miles per hour when he reached a passing lane, but accelerated again when he reached the end of the passing lane and the car behind him had not attempted to pass. Shortly thereafter, while on a straight section of the highway, Fossa noticed that the car behind him was trying to pass. He saw headlights approaching in the opposite direction but did not have room in his lane to move to the right. He told his son there was about to be a head-on collision and immediately saw the impact in his mirror. He pulled over and reported the accident to the California Highway Patrol (CHP).

Margaret Finn testified that at approximately 4:30 a.m. she was driving on the same stretch of highway in the opposite direction as Fossa. She was traveling 55 miles per hour and a car was following directly behind her. She saw headlights coming straight towards her and pulled on to the shoulder to avoid hitting the oncoming car. The oncoming vehicle missed her car by inches and then collided with the car behind her. Finn's passenger called 911 and reported the accident.

Deputy Sherriff Barry Clark testified that when he arrived at the scene he saw Fossa's truck on the side of the road and the two cars that had been involved in the collision. Clark saw a woman with her eyes closed trapped in a Mitsubishi and found defendant in the driver's seat of the other car. Defendant was moaning and bleeding from his face. Paramedic Sammy Hukkanen testified that he checked the driver of the Mitsubishi and determined she had likely died on impact. Doctor Kelly Arthur confirmed at trial that the female driver had died at the scene from blunt force injuries.

Defendant was taken by ambulance and helicopter to the hospital in Santa Rosa. During transport Hukkanen detected a strong odor of alcohol on defendant.

CHP Officer Brian Engle testified that when he arrived at the scene he obtained defendant's wallet and identification and photographed the accident. It was obvious to him that defendant's car had crossed into the oncoming lane of traffic. He asked an officer in Santa Rosa to confirm that defendant was the driver and check his sobriety. At

the hospital, the officer smelled alcohol on defendant and had his blood drawn at 8:19 a.m.

Criminalist Michael Potts analyzed the blood sample and testified that at 8:19 a.m. defendant's blood alcohol concentration (BAC) level was .11 percent. Based on the average rate of elimination of alcohol from the bloodstream, he estimated that defendant's BAC level was .18 percent at the time of the accident. Forensic toxicologist Daniel Coleman testified that he also tested defendant's blood sample and concluded that defendant had used marijuana within hours of the accident. Although he could not pinpoint the exact time, he explained that one of the compounds found in defendant's blood at 8:19 a.m. usually is eliminated within six to eight hours after ingestion. He testified that marijuana can affect the ability to drive safely. He also testified that he found evidence of cocaine use in defendant's blood but that he could not pinpoint when the cocaine had been ingested.[2]

Officer Kevin Domby testified that at the scene he found in defendant's car a bottle of Wild Turkey whiskey, one-quarter full, and a burnt marijuana cigarette.[3] Two of defendant's friends testified that defendant had been with them on Saturday night and that he and his friends had been drinking from the Wild Turkey bottle.

---

[2]     Defendant did not object to any of Coleman's testimony. On appeal, however, he contends that all of this evidence should have been excluded under Evidence Code sections 350 and 352. This claim has not been adequately preserved. (*People v. Rogers* (1978) 21 Cal.3d 542, 548.) In any event, we see no reason to assume that if asserted the trial court would have considered the potential prejudice of this evidence to outweigh its probative value.

[3]     Defendant contends that evidence of the whiskey bottle "was improperly admitted as the search of the vehicle was done in violation of appellant's constitutional rights." Defendant did not challenge the validity of the search or object to the admission of this evidence at trial. This argument also has not been preserved for appeal (§ 1538.5, subd. (m); *People v. Superior Court (Wells)* (1980) 27 Cal.3d 670, 673), and in all events we see no basis on which the trial court might have concluded that the evidence was obtained illegally.

3

San Francisco Police Officer Troy Carrasco testified that he had arrested defendant for driving under the influence of alcohol on April 5, 1996, at 1:30 a.m. Defendant had been driving a motorcycle at 50 miles per hour in a 25-miles per hour zone and had driven through multiple stop signs before stopping. His BAC level at the time of the arrest was .14 percent.

San Francisco Police Officer Philip Papale testified that he arrested defendant on February 6, 1997, for driving under the influence of alcohol. Defendant was speeding and admitted to the officer that earlier in the evening he had run into a taxi cab. Defendant's BAC level was .19 percent.

Defendant testified on his own behalf. He acknowledged his two prior drunk driving convictions and explained that after the second conviction he took an 18 month course on the dangers of alcohol and driving. After a girlfriend of a friend of his died, he has never again driven after drinking. He knew that if he continued to drink and drive he could kill someone. Defendant admitted that on the Saturday night before the accident he had gotten drunk with his friends and also used marijuana and cocaine. He stopped drinking on Sunday because he knew he would be driving back to San Francisco. He placed the half empty Wild Turkey bottle under the passenger seat as he left with his friends to go to the bar. He explained that he did not try to pass Fossa's truck in the passing lane because he was too far behind. Later, when he tried to pass on the straight road, he underestimated the length of the truck and boat. After he pulled out to pass he was trapped and could not avoid the oncoming car. After the collision he was in pain and to ease the pain started drinking the whiskey.

On rebuttal, another officer testified that he had not observed any blood on the whiskey bottle.

## DISCUSSION

Section 191.5, subdivision (a) defines gross vehicular manslaughter while intoxicated as "the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the

4

commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." "Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.) Defendant contends the trial court erred in allowing the prosecution to present testimony regarding the details of his prior convictions to establish that he was grossly negligent. Additionally, he argues that even if that evidence was admissible, there was insufficient evidence to support the jury's verdict.

### 1. *Admissibility of Defendant's Prior Misconduct.*

In *People v. Ochoa* (1993) 6 Cal.4th 1199, 1204-1205, the court held that "evidence of defendant's prior conviction for driving under the influence of alcohol, his subsequent probation, and his attendance at traffic school, including an alcohol awareness class discussing the dangers of drinking and driving" was admissible to show defendant's "awareness of the risk." The court reasoned that although the test for gross negligence is an objective test, "[i]n determining whether a reasonable person in defendant's position would have been aware of the risks, the jury should be given relevant facts as to what defendant knew, including his actual awareness of those risks. . . . [I]f the evidence showed that defendant actually appreciated the risks involved in a given enterprise, and nonetheless proceeded with it, a finding of gross negligence (as opposed to simple negligence) would be appropriate whether or not a reasonable person in defendant's position would have recognized the risk." (*Id.* at p. 1205, italics omitted.)

Defendant acknowledges that under *People v. Ochoa* evidence of his "actual convictions and education about the dangers of drinking and driving received after those convictions is relevant to [his] knowledge of those dangers." He argues, however, that

5

"evidence of the actual facts underlying those convictions does not provide evidence of his knowledge of the dangers of drinking and driving" so that the evidence was both irrelevant and prejudicial. We review the trial court's decision admitting evidence for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

Contrary to defendant's assertion, the trial court could reasonably consider the details surrounding defendant's prior convictions probative of his awareness of the risks of driving while intoxicated and not unduly prejudicial. The evidence of defendant's BAC levels at the time of the prior offenses tended to show that defendant was made aware of the extent of impairment resulting from a level of intoxication similar to the level during the fatal accident. The testimony that the second conviction followed an accident, albeit a minor one, was probative of defendant's awareness of the danger of an accident while driving intoxicated. The officers' testimony regarding the prior incidents was brief and not particularly sensational. The prior incidents were both significantly less egregious than the present offense. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1338.) The evidence was not inflammatory but was relevant to defendant's state of mind at the time of the instant offense. Given that the prior convictions and resulting punishment and treatment were admissible, as defendant concedes, the additional testimony that he committed a number of traffic infractions while intoxicated was hardly so prejudicial that it outweighed the probative value of this evidence.[4]

In *People v. Ochoa, supra*, 6 Cal.4th at page 1206, the court emphasized that any potential prejudice resulting from the admission of evidence of prior misconduct could be

---

[4]     The court excluded the records from defendant's prior convictions under Evidence Code section 352, but this does not mean that the court abused its discretion in allowing the police officers to testify regarding the prior offenses. The court excluded the documentary evidence, including documents showing additional prior charges to which defendant did not plead guilty, on the basis that the additional charges were not particularly probative in light of defendant's stipulation to the prior convictions. The court also was concerned that the jury might not understand the various notations in the proffered minute orders. Defendant objected to the admission of the documentary evidence on the ground that it was cumulative.

cured with a proper limiting instruction. Here, the court instructed the jury that
"Evidence has been introduced for the purpose of showing that the defendant committed
crimes other than that for which he is on trial. [¶] This evidence, if believed, may not be
considered by you to prove that defendant is a person of bad character or that he has a
disposition to commit crimes. It may be considered by you only for the limited purpose
of determining if it tends to show: [¶] The existence of gross negligence which is a
necessary element of the crime charged, and the lesser included offense of violating Penal
Code [section] 192[, subdivision] (c)(1)."[5] (CALJIC No. 2.50.) The prosecutor argued,
consistent with this instruction, "We had an unusual situation here in this case. It's
unusual because rarely does the law allow this, but we were able to go into previous
crimes of Mr. Bigone for a very limited purpose, and I want to urge you right at the outset
it's not the People's position that he's guilty of this case because he was guilty before.
This case has to rise or fall on its own merits. You can't say, well, he's done it before,
find him guilty, and we are not asking that. . . . [¶] What it does is it tells you what
knowledge he had, what understanding of the risks of driving drunk or under the
influence . . . . [¶] . . . [¶] . . . [W]e were allowed to put in that evidence because his
understanding, his appreciation of the risk to human life is way up there from his
experience. He should have known better. He should have learned from his lesson. Any
reasonable person would have. And the court will instruct you not to use that evidence
for any other purpose." Thus, the jury was properly instructed that the evidence of
defendant's prior misconduct could be used only to evaluate his appreciation of the risks
involved in driving while under the influence of alcohol and the evidence was urged to
show only that.

   Finally, the likelihood of any prejudice resulting from the evidence of the prior
convictions is particularly remote in this case because defendant did not deny full

---

[5]    Defendant's argument that the court erred by failing to give a separate limiting
instruction at the time of the officers' testimony is without merit. Defendant did not
request such a limiting instruction at the time of the testimony, nor was it essential that
the instruction be given at that time.

7

appreciation of the risks of driving while intoxicated. Indeed, he emphasized his awareness of the dangers of driving after drinking. His defense was that he did not consume any intoxicants the day of the accident until after the collision, when he drank from the bottle in his car to relieve his pain. The details of the prior convictions were hardly likely to affect the jury's evaluation of the credibility of that defense.

## 2. *Substantial evidence supports the jury's finding of gross negligence.*

The jury was instructed that "Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under similar circumstances." (CALJIC No. 8.91.) " 'Gross negligence' means conduct which is more than ordinary negligence. . . . 'Gross negligence' refers to a negligent act which is aggravated, reckless or flagrant and which is such a departure from the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to a proper regard for human life or to constitute indifference to the consequences of those acts. The facts must be such that the consequences of the negligent act could reasonably have been foreseen and it must appear that the death was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrantly negligent act." (CALJIC No. 3.36.) The jury also was instructed that "[t]he mere fact that a defendant drives a motor vehicle while under the influence of alcohol and violates a traffic law is insufficient in itself to constitute gross negligence. You must determine gross negligence from the level of the defendant's intoxication, the manner of driving, or other relevant aspects of the defendant's conduct resulting in the fatal accident." (CALJIC No. 8.94.) Contrary to defendant's argument, the finding that defendant's conduct was grossly negligent is supported by substantial evidence.

" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the

8

judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' " *(People v. Ochoa, supra,* 6 Cal.4th at p. 1206.)

The trier of fact reasonably could infer that defendant, having suffered two prior convictions for driving under the influence of alcohol, one of which involved a traffic accident, having been placed on probation and attended an alcohol-awareness class, and being fully aware of the risks of such activity, nonetheless drove in a reckless manner while highly intoxicated. (See *People v. Ochoa, supra,* 6 Cal.4th at p. 1208.) Defendant's argument that his driving was "not in the least bit reckless or egregious" is not convincing. Fossa testified that defendant had the opportunity safely to pass his truck using the passing lane, but did not do so. Rather, he subsequently tried to pass Fossa when oncoming vehicles were clearly visible. *(People v. McCarnes* (1986) 179 Cal.App.3d 525, 535 ["Defendant's conduct was even more egregious because the oncoming vehicle he collided with was clearly visible to defendant as he entered the opposing lane"].) The accident was foreseeable as evidenced in part by Fossa's testimony that he thought it was a "stupid" time to try to pass his truck, and the statement he made to his son that there was about to be a collision. The Attorney General observes correctly that under different circumstances this accident might be viewed as a mistake in judgment, but the evidence supports the jury's determination that defendant's excessive alcohol consumption coupled with the attempt to pass when oncoming traffic was visible constituted gross negligence.

Defendant's attempt to impeach the evidence regarding his estimated blood alcohol level at the time of the crime is similarly unavailing. The criminalist testified that defendant's BAC level was .11 percent at 8:19 a.m. Based on an average elimination rate of .02 percent per hour, he estimated that defendant's BAC level at the time of the

9

accident was .18 percent. On cross-examination, the criminalist acknowledged that if, as defendant testified, he had nothing to drink prior to the accident but quickly consumed a substantial amount of whisky after the impact, it was possible for his BAC level to register .11 percent when tested at 8:19 a.m. The jury, however, was entitled to reject defendant's testimony that formed the premise of the hypothetical. Likewise, the fact that defendant's BAC level at 6:15 a.m. was calculated at .135 percent does not render the criminologist's testimony unsound.[6] The witness explained that the range of elimination is between .01 and .03 percent per hour. Based on this rate, defendant's BAC level dropped by .025 percent in approximately two hours. Even applying this elimination rate, rather than the average, defendant's BAC level could be estimated as at least .15 percent, which is significantly over the legal limit. (See *People v. Ochoa, supra*, 6 Cal.4th at pp. 1206-1207 [rejecting characterization of "defendant's probable .15 percent intoxication as 'not excessive' " on ground that "this percentage was nearly twice the legally permitted level for drivers of motor vehicles, and one and one half times the level at which one is presumed intoxicated and impaired"].)

Accordingly, the jury "could conclude from defendant's course of conduct and preexisting knowledge of the risks that he exercised so slight a degree of care as to exhibit a conscious indifference or 'I don't care attitude' concerning the ultimate consequences of his actions. Applying the objective test for gross negligence, any reasonable person in defendant's position would have been aware of the risks presented by his conduct." (*People v. Ochoa, supra*, 6 Cal.4th at p. 1208.)[7]

---

[6]     The criminalist testified that the hospital independently determined that defendant's BAC level at 6:15 a.m. was .163 percent. The procedure used by the hospital, however, results in a higher BAC level than that used by the police department. The criminalist testified that the police department's equivalent would be a BAC level of .135 percent.

[7]     For the same reason, we reject defendant's contention that the court erred in denying his motion for judgment of acquittal pursuant to section 1118.1.

10

3.    *Defendant received a fair trial.*

Defendant contends that he did not receive a fair trial because his attorney failed to "fully explore the meaning of the BAC results and the failure to educate the jury as to the various permutations and possibilities that flow from the empirical toxicological evidence." He also contends that the prosecutor committed misconduct by misleading "the jury into believing that there was only one possible BAC at the time of the accident, namely 0.18 percent." Defendant cites no authority in support of his argument and devotes only one paragraph to the issue. In any event, as discussed above, the criminalist presented the evidence of defendant's BAC level in a comprehensive manner and acknowledged that the results were also consistent with defendant's version of the facts. Hence, defendant's attorney was not deficient in his cross examination of this witness. (*In re Resendiz* (2001) 25 Cal.4th 230, 239; *Strickland v. Washington* (1984) 466 U.S. 668, 697.) Likewise, there was nothing unfair, let alone deceptive or reprehensible, about the prosecutor's presentation of the case. (*People v. Ochoa* (1998) 19 Cal.4th 353, 427.)

4.    *Defendant's sentence is not constitutionally excessive.*

Defendant contends that his sentence violates the prohibition against cruel and unusual punishment under the Eighth Amendment of the United States Constitution and article I, section 17 of the California Constitution.[8] Punishment may be unconstitutional "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) In *Lynch*, the court "prescribed three 'techniques' for assessing whether punishment is cruel or unusual. In order to determine if a punishment 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity' [citation]

---

[8]    Initially, we note that defendant failed to challenge his sentence as cruel and unusual in the trial court, and thus may be deemed to have waived any such argument on appeal. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) Nonetheless, we conclude for the reasons stated above that defendant's claim fails on the merits.

11

courts should (1) consider 'the nature of the offense and/or the offender' [citation], (2) compare the punishment to other punishments imposed by the same jurisdiction for more serious offenses [citation] and (3) compare the punishment to other punishments imposed by other jurisdictions for the same offense." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510.)

Here, defendant focuses exclusively on the second consideration. He argues that his sentence is unconstitutional because it is the same as that which would be imposed on one "who likewise is convicted under Penal Code section 191.5[, subdivision] (d) but who has one or more prior felony convictions for vehicular manslaughter."[9] Defendant implicitly acknowledges that statutory schemes that provide increased punishment for recidivists are generally constitutional. He argues, however, that section 191, subdivision (d) is unconstitutional because a defendant "whose criminal history involves two misdemeanors, neither of which involved injury, gets the same punishment, 15 years to life in prison, as an individual who has killed a person, perhaps twice, before."

Section 191.5, subdivision (d), however, does differentiate between injury and non-injury related priors. Under this sentencing scheme, an enhanced sentence may be imposed based on a single prior injury related conviction, but in the absence of a prior injury there must be multiple prior convictions for driving while under the influence to qualify for the same punishment. This distinction and the statutory sentencing scheme as a whole are both reasonable. The Legislature enacted section 191.5, subdivision (d), to

---

[9]      Section 191.5, subdivision (d), provides: "A person convicted of violating subdivision (a) who has one or more prior convictions of this section or of paragraph (1) of subdivision (c) of Section 192, subdivision (a) or (b) of Section 192.5 of this code, or of violating Section 23152 punishable under Sections 23540, 23542, 23546, 23548, 23550, or 23552 of, or convicted of Section 23153 of, the Vehicle Code, shall be punished by imprisonment in the state prison for a term of 15 years to life. Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce the term imposed pursuant to this subdivision." Vehicle Code sections 23540, 23542, 23546, 23548, 23550, or 23552 all provide enhanced punishment for multiple convictions under Vehicle Code section 23152. The remaining statutes referenced in section 191.5, subdivision (d), involve convictions which require bodily injury to another person.

12

increase the punishment for anyone convicted of gross vehicular manslaughter who had a *history* of driving under the influence. (See Stats. 1996, ch. 645, § 1, p. 3628 (Assem. Bill No. 1985 (1995-1996 Reg. Sess.)) ["This act shall be known and may be cited as 'Courtney's Law,' in memory of Courtney Cheney of Roseville, who was killed by a drunken driver with a long history of driving under the influence"].) The scheme is consistent with the notion that the law may punish more severely those who do not learn from their prior mistakes. (*People v. Martinez, supra,* 71 Cal.App.4th at p. 1512 ["[S]ociety is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies. If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time"].) In this instance, the Legislature allows an additional opportunity to learn from prior mistakes when no one has been injured, but concluded reasonably that more severe punishment is warranted when one continues driving while intoxicated after two prior convictions.

## DISPOSITION

The judgment is affirmed.

_____    _____

Pollak, J.

We concur:

_____

Parrilli, Acting P. J.

_____

Siggins, J.

13

**S154193**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ERIC PAUL BIGONE on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

DEC **1 9** 2007

Frederick K. Ohlrich Clerk

_____

Deputy

**GEORGE**
_____

Chief Justice

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12        (a)  Name and location of court that imposed sentence (for example: Alameda

13            County Superior Court, Oakland):

14            <u>Lake County Superior</u>

15            Court                   Location

16        (b)  Case number, if known __<u>CR901979</u>__

17        (c)  Date and terms of sentence __<u>15 years to life</u>__

18        (d)  Are you now in custody serving this term? (Custody means being in jail, on

19            parole or probation, etc.)        Yes _✓_   No ____

20            Where?

21            Name of Institution: <u>Calif. Correctional Center, Lassen</u>

22            Address: <u>P.O. Box 2210, Susanville, Ca 96127</u>

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  <u>Gross Vehicular Manslaughtere  P.C. 3 191.5, (a)</u>

27  <u>Two prior convictions        P.C. 3 191.5 (d)</u>

28  _____

PET. FOR WRIT OF HAB. CORPUS   - 2 -

1    3. Did you have any of the following?

2          Arraignment:                              Yes __✓__    No ____

3          Preliminary Hearing:                      Yes __✓__    No ____

4          Motion to Suppress:                       Yes ____     No __✓__

5    4. How did you plead?

6          Guilty ____    Not Guilty __✓__    Nolo Contendere ____

7          Any other plea (specify) ____N/A_____

8    5. If you went to trial, what kind of trial did you have?

9          Jury ____    Judge alone ____    Judge alone on a transcript ____

10    6. Did you testify at your trial?                Yes __✓__    No ____

11    7. Did you have an attorney at the following proceedings:

12          (a)    Arraignment                        Yes __✓__    No ____

13          (b)    Preliminary hearing                Yes __✓__    No ____

14          (c)    Time of plea                       Yes _N/A_    No _N/A_

15          (d)    Trial                              Yes __✓__    No ____

16          (e)    Sentencing                         Yes __✓__    No ____

17          (f)    Appeal                             Yes __✓__    No ____

18          (g)    Other post-conviction proceeding   Yes ____     No __✓__

19    8. Did you appeal your conviction?               Yes __✓__    No ____

20          (a)    If you did, to what court(s) did you appeal?

21                 Court of Appeal                    Yes __✓__    No ____

22                 Year: _2007_    Result: _Denied_____

23                 Supreme Court of California        Yes __✓__    No ____

24                 Year: _2007_    Result: _Denied_____

25                 Any other court                    Yes ____     No __✓__

26                 Year: ____    Result: _____

27

28          (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS        - 3 -

1            petition?                  Yes ✓     No____

2        (c)    Was there an opinion?        Yes ✓     No____

3        (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                 Yes ____     No ✓

5             If you did, give the name of the court and the result:

6                          N/A

7

8 9. Other than appeals. have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court. state or federal?            Yes ✓     No____

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice. you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16        (a)    If you sought relief in any proceeding other than an appeal, answer the following

17               questions for each proceeding. Attach extra paper if you need more space.

18            I.    Name of Court: State Supreme Court

19                  Type of Proceeding: Original Petition

20                  Grounds raised (Be brief but specific):

21                  a. see attached petition

22                  b._____

23                  c._____

24                  d._____

25                  Result: See Attached     Date of Result:____

26            II.    Name of Court: See Attached

27                  Type of Proceeding: _____

28                  Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS     - 4 -

1    a._____

2    b._____

3    c._____

4    d._____

5    Result: _____ Date of Result:_____

6    III.    Name of Court: __See attached_____

7            Type of Proceeding: _____

8            Grounds raised (Be brief but specific):

9            a._____

10           b._____

11           c._____

12           d._____

13           Result: _____ Date of Result:_____

14   IV.     Name of Court: _____

15           Type of Proceeding: _____

16           Grounds raised (Be brief but specific):

17           a._____

18           b._____

19           c._____

20           d._____

21           Result: _____ Date of Result:_____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                    Yes _____    No __✔__

24   Name and location of court: __N/A_____

25   B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27   support each claim. For example, what legal right or privilege were you denied? What happened?

28   Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS          - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:  N/A

6

7  Supporting Facts:

8

9

10

11  Claim Two:

12

13  Supporting Facts:

14

15

16

17  Claim Three:

18

19  Supporting Facts:

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25      See attached petition for writ of

26  habeas corpus

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1      List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4  _____See attached petition for Writ of_____

5  _____Habeas Corpus_____

6  _____

7  Do you have an attorney for this petition?                Yes_____    No_✓_

8  If you do, give the name and address of your attorney:

9  _____N/A_____

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on   January 20                         _____

14                Date                            Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 7 -

# SERVICE BY MAIL

I, _Erik Paul Bigone_____, am over the age of eighteen years (18) of age and
am (✓) am not ( ) a party to the within action. My resident address is California Correctional
Center, P.O. Box 2210, Facility Building 3·14bL Susanville, CA 96127. I am readily familiar
with the processing and delivery of mail in and for the United States Post Office.

On 30th day of Jan year 2008, I did deposit an envelope with postage fully pre-paid,
containing a Petition for Writ of Habeas Corpus, with exhibits in the Institutional Mail, signed by
a Correctional Officer, for delivery to the following addressee(s):

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIF.
450 Golden Gate Avenue
P.O. Box 36060
San Francisco, CA 94102

Erik Paul Bigone  CDC#
C.C.C. Lassen Unit  FB;
P.O. Box 2210
Susanville, CA 96127

Keith Robert Lugo  CDC# E-91649
C.C.C. Lassen Unit  Fb: L5-144
P.O. Box 2210
Susanville, CA 96127

I declare under the penalty of perjury under the laws of the State of California and the
United States that the foregoing is true and correct.

Dated: January 30, 2008

Respectfully submitted,

Erik Paul Bigone



Eric Paul Bignone
CDC# E-03015
C.C.C. Lassen Unit
P.O. Box 2210
Susanville, CA 96127

RENO

RECEIVED

FEB - 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA