IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIC PAUL BIGONE, | ) | No. C 08-0811 JSW (PR) |
| Petitioner, | ) | |
| | ) | **ORDER DENYING PETITION FOR** |
| vs. | ) | **A WRIT OF HABEAS CORPUS AND** |
| | ) | **DENYING CERTIFICATE OF** |
| K. PROSPER, Warden, | ) | **APPEALABILITY** |
| Respondent. | ) | |

## **INTRODUCTION**

Eric Paul Bigone, a prisoner of the State of California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state conviction.  This Court ordered Respondent to show cause why the petition should not be granted.  Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged the record.  Petitioner filed a traverse.  This order denies the petition for a writ of habeas corpus on the merits.

## **PROCEDURAL BACKGROUND**

Petitioner was convicted of gross vehicular manslaughter while intoxicated.  *See* Cal. Penal Code § 191.5(a).  He was sentenced to prison for fifteen years to life.  The conviction and sentence were affirmed by the California Court of Appeal, and the California Supreme Court denied review.

## **FACTUAL BACKGROUND**

The facts underlying the charged offenses, as found by the California Court of Appeal, are as follows:

Joseph Fossa testified that at 4:00 a.m. on Monday May 31, 2004, he and his son were driving on highway 29 in Lake County. He was driving a truck and pulling a boat. He was traveling at 50-55 miles per hour when he saw headlights behind his truck. He slowed to 45 miles per hour when he reached a passing lane, but accelerated again when he reached the end of the passing lane and the car behind him had not attempted to pass. Shortly thereafter, while on a straight section of the highway, Fossa noticed that the car behind him was trying to pass. He saw headlights approaching in the opposite direction but did not have room in his lane to move to the right. He told his son there was about to be a head-on collision and immediately saw the impact in his mirror. He pulled over and reported the accident to the California Highway Patrol (CHP).

Margaret Finn testified that at approximately 4:30 a.m. she was driving on the same stretch of highway in the opposite direction as Fossa. She was traveling 55 miles per hour and a car was following directly behind her. She saw headlights coming straight towards her and pulled on to the shoulder to avoid hitting the oncoming car. The oncoming vehicle missed her car by inches and then collided with the car behind her. Finn's passenger called 911 and reported the accident.

Deputy Sherriff Barry Clark testified that when he arrived at the scene he saw Fossa's truck on the side of the road and the two cars that had been involved in the collision. Clark saw a woman with her eyes closed trapped in a Mitsubishi and found defendant in the driver's seat of the other car. Defendant was moaning and bleeding from his face. Paramedic Sammy Hukkanen testified that he checked the driver of the Mitsubishi and determined she had likely died on impact. Doctor Kelly Arthur confirmed at trial that the female driver had died at the scene from blunt force injuries.

Defendant was taken by ambulance and helicopter to the hospital in Santa Rosa. During transport Hukkanen detected a strong odor of alcohol on defendant.

CHP Officer Brian Engle testified that when he arrived at the scene he obtained defendant's wallet and identification and photographed the accident. It was obvious to him that defendant's car had crossed into the oncoming lane of traffic. He asked an officer in Santa Rosa to confirm that defendant was the driver and check his sobriety. At the hospital, the officer smelled alcohol on defendant and had his blood drawn at 8:19 a.m.

Criminalist Michael Potts analyzed the blood sample and testified that at 8:19 a.m. defendant's blood alcohol concentration (BAC) level was .11 percent. Based on the average rate of elimination of alcohol from the bloodstream, he estimated that defendant's BAC level was .18 percent at the time of the accident. Forensic toxicologist Daniel Coleman testified that he also tested defendant's blood sample and concluded that defendant had used marijuana within hours of the accident. Although he could not pinpoint the exact time, he explained that one of the compounds found in defendant's blood at 8:19 a.m. usually is eliminated within six to

eight hours after ingestion. He testified that marijuana can affect the ability to drive safely. He also testified that he found evidence of cocaine use in defendant's blood but that he could not pinpoint when the cocaine had been ingested.  [FN2. Defendant did not object to any of Coleman's testimony. On appeal, however, he contends that all of this evidence should have been excluded under Evidence Code sections 350 and 352. This claim has not been adequately preserved. ( People v. Rogers (1978) 21 Cal.3d 542, 548.) In any event, we see no reason to assume that if asserted the trial court would have considered the potential prejudice of this evidence to outweigh its probative value.]

Officer Kevin Domby testified that at the scene he found in defendant's car a bottle of Wild Turkey whiskey, one-quarter full, and a burnt marijuana cigarette.  [FN3. Defendant contends that evidence of the whiskey bottle "was improperly admitted as the search of the vehicle was done in violation of appellant's constitutional rights." Defendant did not challenge the validity of the search or object to the admission of this evidence at trial. This argument also has not been preserved for appeal (§ 1538.5, subd. (m); People v. Superior Court (Wells) (1980) 27 Cal.3d 670, 673), and in all events we see no basis on which the trial court might have concluded that the evidence was obtained illegally.]  Two of defendant's friends testified that defendant had been with them on Saturday night and that he and his friends had been drinking from the Wild Turkey bottle.

San Francisco Police Officer Troy Carrasco testified that he had arrested defendant for driving under the influence of alcohol on April 5, 1996, at 1:30 a.m. Defendant had been driving a motorcycle at 50 miles per hour in a 25-miles per hour zone and had driven through multiple stop signs before stopping. His BAC level at the time of the arrest was .14 percent.

San Francisco Police Officer Philip Papale testified that he arrested defendant on February 6, 1997, for driving under the influence of alcohol. Defendant was speeding and admitted to the officer that earlier in the evening he had run into a taxi cab. Defendant's BAC level was .19 percent.

Defendant testified on his own behalf. He acknowledged his two prior drunk driving convictions and explained that after the second conviction he took an 18 month course on the dangers of alcohol and driving. After a girlfriend of a friend of his died, he has never again driven after drinking. He knew that if he continued to drink and drive he could kill someone. Defendant admitted that on the Saturday night before the accident he had gotten drunk with his friends and also used marijuana and cocaine. He stopped drinking on Sunday because he knew he would be driving back to San Francisco. He placed the half empty Wild Turkey bottle under the passenger seat as he left with his friends to go to the bar. He explained that he did not try to pass Fossa's truck in the passing lane because he was too far behind. Later, when he tried to pass on the straight road, he underestimated the length of the truck and boat. After he pulled out to pass he was trapped and could not avoid the oncoming car. After

the collision he was in pain and to ease the pain started drinking the whiskey.

On rebuttal, another officer testified that he had not observed any blood on the whiskey bottle.

Answer, Ex. 3 at 2-4.[1]

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at 409.

---

[1]  Unless otherwise indicated, citations to "Ex." are to the record lodged with the court by respondent.

4

1    The only definitive source of clearly established federal law under 28 U.S.C. §

2    2254(d) is in the holdings of the Supreme Court as of the time of the state court decision.

3    *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  While

4    the circuit law may be "persuasive authority" for the purposes of determining whether a

5    state court decision is an unreasonable application of Supreme Court precedent, only the

6    Supreme Court's holdings are binding on the state courts and only those holdings need be

7    "reasonably" applied.  *Clark*, 331 F.3d at 1069.

8        In deciding whether a state court's decision is contrary to, or an unreasonable

9    application of, clearly established federal law, a federal court looks to the decision of the

10   highest state court to address the merits of the Petitioner's claim in a reasoned decision.

11   *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

12       In his petition for a writ of habeas corpus, Petitioner asserts that: (1) the trial court

13   violated his right to due process by admitting evidence regarding his prior conviction; (2)

14   his right to due process was violated because there was not sufficient evidence to prove

15   beyond a reasonable doubt that he was guilty of gross negligence; (3) prosecutorial

16   misconduct caused a violation of his right to due process; (4) he received ineffective

17   assistance from trial counsel; and (5) the cumulative impact of the foregoing errors

18   resulted in a violation of his right to due process.

19                              **DISCUSSION**

20   **I.    Admission of Evidence of Prior Convictions**

21       The trial court allowed two San Francisco police officers to testify about the facts

22   of two of petitioner's previous drunk-driving misdemeanor offenses.  Petitioner contends

23   that admission of this evidence violated his due process rights.

24       **A.    Legal Standard**

25       A person in custody pursuant to the judgment of a state court can obtain a federal

26   writ of habeas corpus only on the ground that he is in custody in violation of the

27   Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A state court's

28   evidentiary ruling therefore is not subject to federal habeas review unless the ruling

1    deprives the defendant of the fundamentally fair trial guaranteed by due process. *Pulley*

2    *v. Harris*, 465 U.S. 37, 41 (1984); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995);

3    *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Failure to comply with

4    state rules of evidence is neither a necessary nor a sufficient basis for granting federal

5    habeas relief on due process grounds. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir.

6    1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to

7    state evidentiary rules suggests that the trial was conducted in a procedurally fair manner,

8    it is certainly possible to have a fair trial even when state standards are violated;

9    conversely, state procedural and evidentiary rules may countenance processes that do not

10   comport with fundamental fairness. *Id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th

11   Cir. 1983)). But only if there are no permissible inferences that the jury might draw from

12   the evidence can its admission violate due process. *Jammal*, 926 F.2d at 920.

13          **B.      Analysis**

14          Among the elements of the offense of the offense of which petitioner was

15   convicted, gross vehicular manslaughter, are that the death occurred as the proximate

16   result of (1) an unlawful act, not amounting to a felony, committed with gross negligence;

17   or (2) a lawful act that might produce death, committed in an unlawful manner, with gross

18   negligence. Ex. 3 (opinion of the court of appeal) at 5. Under California law, "'gross

19   negligence" can be shown by evidence that the defendant actually appreciated the risks

20   involved in a given enterprise, and nonetheless proceeded with it.'" *Id.* (quoting *People*

21   *v. Ochoa*, 6 Cal. 4th 1199, 1205 (1993)).

22          The court of appeal concluded that the trial court was correct to allow San

23   Francisco police officers to testify to the facts of petitioner's two previous offenses,

24   because those facts were relevant to his awareness of the risks of driving while

25   intoxicated and the probative value of the evidence was not outweighed by its prejudicial

26   effect. *Id.* at 6-8.

27          Petitioner presents several claims arising from the San Francisco officers'

28   testimony. For one, he contends that the evidence should have been excluded because it

was irrelevant and highly prejudicial.  As discussed in the "Legal Standard" section above, however, there is no due process right not have irrelevant or "highly prejudicial" evidence admitted.  These therefore are state law claims, and cannot be the basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law).  This is also true of his claim that the trial court should given sua sponte a limiting instruction at the time the evidence was admitted, rather than only giving one in the jury instructions.  And his contention that allowing the evidence violated the Federal Rules of Evidence is, of course, without merit because those rules do not apply to state court prosecutions such as this.

It may be that petitioner also is trying to contend that the officers' evidence was admitted to show his predisposition to drive drunk, and that its admission thus violated due process.  The jury could have inferred from this evidence that because of his earlier experiences, petitioner was aware of the danger – an inference that would go to the gross negligence element.  Because the jury could have drawn this permissible inference from the evidence, the fact that it also could have drawn an arguably impermissible inference – that petitioner had a propensity to drive drunk – does not mean that its admission violated due process. *See Jammal*, 926 F.2d at 920 (only if there are no permissible inferences that the jury might draw from the evidence can its admission violate due process).

Additionally, although in most cases propensity evidence is inadmissible, the United States Supreme Court has declined to decide whether its admission violates due process, so there is no "clearly established" Supreme Court authority on the point.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) (declining to rule on the constitutionality of propensity evidence); *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ;" finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an

1  unreasonable application of, clearly established Federal law under § 2254(d)).

2       For the above reasons, there was no due process violation; habeas relief will not be

3  granted on this claim.

4  **II.   Sufficiency of the Evidence**

5       Petitioner claims that his conviction was "not supported by the facts." Pet. at 13.

6  Translated into constitutional terms that could be the basis for federal habeas relief, this is

7  a claim that there was not sufficient evidence to support the conviction.

8       **A.   Legal Standard**

9       The Due Process Clause "protects the accused against conviction except upon

10  proof beyond a reasonable doubt of every fact necessary to constitute the crime with

11  which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who

12  alleges that the evidence in support of his state conviction cannot be fairly characterized

13  as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt

14  therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979),

15  which, if proven, entitles him to federal habeas relief, *id*. at 324. The federal court

16  determines only whether, "after viewing the evidence in the light most favorable to the

17  prosecution, any rational trier of fact could have found the essential elements of the crime

18  beyond a reasonable doubt." *Id*. at 319. Only if no rational trier of fact could have found

19  proof of guilt beyond a reasonable doubt, may the writ be granted. *Id*. at 324

20       **B.   Analysis**

21       California law defines "gross negligence" as more than negligence; it is "'a

22  negligent act which is aggravated, reckless or flagrant and which is such a departure from

23  the conduct of an ordinarily prudent, careful person under the same circumstances as to

24  be contrary to a proper regard for human life or to constitute indifference to the

25  consequences of those acts.'" Ex. 3 (opinion of the court of appeal) at 8 (quoting

26  CALJIC 3.36). "'The facts must be such that the consequences of the negligent act could

27  reasonably have been foreseen and it must appear that the death was not the result of an

28  inattention, mistaken judgment or misadventure but the natural and probable result of an

aggravated, reckless or flagrantly negligent act.'" *Id.* The court of appeal held that the jury's finding that defendant's conduct was grossly negligent was supported by substantial evidence. *Id.*

The following facts, drawn from the court of appeal's undisputed statement, support the jury's conclusion that petitioner was grossly negligent. Petitioner had twice been convicted of drunken driving, both times with blood alcohol levels similar to his level in this incident. In one of the prior incidents he had an accident, and in both he had been speeding. As a result of these convictions he had attended educational programs about the dangers of drinking and driving. The crash occurred at roughly 4 am, so it was dark. Petitioner had failed to take advantage when the car he was trying to pass showed to 45 mph and pulled to the right at a passing area. Because the car being passed sped back up after the passing area, the jury could have found that petitioner was attempting to pass at more than 55 mph, at night, on a two-lane road, and in those circumstances was attempting to pass a car pulling a boat trailer – a maneuver that would require extended exposure on the wrong side of the road. And, of course, the evidence was that he attempted to do so while facing the headlights of an oncoming car. Both the driver of the car he was attempting to pass, who told his son that there was about to be a head-on accident, and the driver of the first of the oncoming cars, who pulls strongly to the right, recognized the danger.

This evidence was sufficient for rational jurors to find that petitioner was grossly negligent under the California definition of that term. There was no due process violation. And as a result, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## III.   Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct by asking a criminalist witness about the effects of marijuana when used by a person with alcohol in his or her system.

///

**A.     Legal Standard**

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights are only violated if a prosecutor's misconduct renders a trial "fundamentally unfair."  *Id.; Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

**B.     Analysis**

Petitioner contends that the prosecutor committed misconduct by "eliciting testimony from [a criminalist witness] about the effects of marijuana and other illicit drugs on a person" who had ingested alcohol.  It is unclear why he thinks that this was misconduct, given that another witness testified that petitioner had traces of marijuana in his system; the best explanation petitioner provides is his contention that "[t]here was absolutely no evidence in the record to support, let alone even suggest, that marijuana or anything else had been ingested such that the alleged impaired driving could be imputed onto petitioner . . . [the forensic toxicologist] could not offer an opinion as to whether the trace substances found had any effect."  That is, it appears petitioner's claim is that the prosecutor committed misconduct by asking whether use of marijuana would affect the ability to operate a motor vehicle of a person who also had consumed alcohol, when the toxicologist could not offer an opinion as to whether petitioner's own driving was affected.

First, the predicate for petitioner's claim, that there was no evidence his consumption of marijuana affected his driving, is incorrect.  The toxicologist testified that if a person with petitioner's blood alcohol level, and who had recently used marijuana, drove in the way petitioner did, that would "likely" be the product of the marijuana and

1   alcohol consumption.  Ex. 2 at 304-05.

2       Secondly, there was evidence that petitioner had recently used marijuana (Ex. 2 at

3   300), and that he had used alcohol (*id.* at 269-70).  That evidence was sufficient to

4   support the prosecutor's question about marijuana's effect on a person who also had

5   consumed alcohol.  It was for the jury to decide whether they believed that petitioner's

6   marijuana consumption affected his driving; merely asking the question was not

7   misconduct.

8        Petitioner also contends that the prosecutor committed misconduct by

9   "allow[ing] [the criminalist] to mislead the jury into believing that there was only one

10  possible, i.e., mandatory, conclusion" that petitioner's blood alcohol level must have been

11  0.18 percent, "and for the prosecutor to rely on that number."  A review of the

12  ciminalist's testimony shows that although on direct he presented the 0.18 figure, in cross

13  and on redirect he testified to a range of elimination rates that could apply to the time

14  between the crash and the time of testing. Ex.2D at 291-92.  Petitioner therefore has not

15  established the predicate for this claim – that the criminalist misled the jury by testifying

16  that only one blood alcohol level was possible.  Furthermore, to establish a constitutional

17  violation on this claim petitioner would have to show that the prosecutor *knowingly*

18  presented false evidence, *see United States v. Agurs*, 427 U.S. 97, 103 (1976), and he not

19  only has not shown that the evidence was false, but, inevitably, also has not shown that

20  the prosecutor knew it to be false.  The prosecutor's actions that petitioner identifies were

21  not improper.  This claim is without merit.

22  **IV.    Ineffective Assistance of Counsel**

23       **A.    Legal Standard**

24       A claim of ineffective assistance of counsel is cognizable as a claim of denial of

25  the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

26  assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to

27  prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish

28  that counsel's performance was deficient, i.e., that it fell below an "objective standard of

reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

## B.   Analysis

Petitioner asks the court to review the record, from which he thinks it will be "abundantly clear" that counsel was ineffective. He also contends that counsel did not effectively advocate on his behalf regarding his blood alcohol level.

It is petitioner's responsibility to specify in his petition the grounds for relief and to present "in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970). The court therefore will consider only the claim that counsel failed to adequately attack the blood alcohol testimony, and will not search the record for possible additional claims.

The defense theory was that petitioner drank from the bottle of Wild Turkey after the crash, to ease his pain. Ex. 2 at 533, 683. Counsel obtained from the criminalist a concession that petitioner's blood alcohol level at the time of the crash would have been zero if he did not start drinking until after the crash, and that this was consistent with his blood alcohol level at the time he was tested. *Id.* at 287-88. He also got the toxicologist

1   to concede that he could not given an opinion as to how long before the crash petitioner

2   used drugs nor that petitioner would have been impaired from the drugs alone. *Id.* at 309-

3   312.  It was essential to establish an evidentiary basis from which counsel could argue

4   that petitioner not only was not drunk at the time of the crash, but also that his driving

5   was not impaired by drug use; this counsel did.  Counsel effectively cross-examined the

6   prosecution's expert witnesses.

7           Aside from this, petitioner does not say what other evidence counsel might have

8   obtained or presented.  He has failed to show that counsel's performance was deficient.

9   **V.    Cumulative Error**

10          Petitioner claims that the cumulative effect of all of the foregoing asserted trial

11  errors caused his trial to be fundamentally unfair, in violation of his right to due process.

12  There is no Supreme Court authority that several errors of less than constitutional

13  magnitude can be cumulated into a due process violation, and the Ninth Circuit has held

14  that they cannot.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (where

15  there is no single constitutional error existing, nothing can accumulate to the level of a

16  constitutional violation).

17          As discussed above, AEDPA mandates that habeas relief may be granted only if

18  the state courts have acted contrary to or have unreasonably applied federal law as

19  determined by the United States Supreme Court.  *Williams v. Taylor*, 529 U.S. at 412

20  ("Section 2254(d)(1) restricts the source of clearly established law to [the Supreme]

21  Court's jurisprudence.").  Consequently, in the absence of Supreme Court precedent

22  recognizing a due process theory of "cumulative error," habeas relief cannot be granted

23  on this claim.

24  **VI.   Appealability**

25          The federal rules governing habeas cases brought by state prisoners have recently

26  been amended to require a district court that denies a habeas petition to grant or deny a

27  certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases,

28  28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

For the above reasons, the petition for a writ of habeas corpus is DENIED. A certificate of appealability also is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  December 8, 2009

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ERIC PAUL BIGONE,

        Plaintiff,

   v.

K PROSPER et al,

        Defendant.

_____/

Case Number: CV08-00811 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 8, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric Paul Bigone
F03865
P.O. Box 2210
Susanville, CA 96127

Dated: December 8, 2009

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

G:\JSWALL\Pro-Se Prisoner\2008\Bigone0811.ruling.wpd